We'll hear the next case on the calendar, United States v. Weinemeyer. Good morning. May it please the Court, my name is Daryl Fields and I represent Mr. Weinemeyer. Could you speak into the mic, please? I apologize, Your Honor. The record indicates that the district court made an error when it imposed the maximum prison sentence in revoking Mr. Weinemeyer's supervisory lease. It concluded that he had been adjudicated a career offender back in 2004 in South Carolina when he was sentenced on the underlying felon and possession. But Mr. Weinemeyer has never been adjudicated a career offender. But what relevance does that have? Let's assume and agree that that was an inaccurate characterization. What relevance does that have to what the district court actually did? Well, a career offender has relevance because the promulgating statute for the guidelines says that career offenders are supposed to receive sentences near the statutory maximum. But under 7B1.4, which is the applicable guidelines section, it has no applicability. That is, whether or not someone's a career offender doesn't — has no relevance to determining the appropriate sentence under the revocation table. Is that right or wrong? Well, it has no specific relevance under Chapter 7, but it has relevance to a court where the court has determined that you're someone who's been previously adjudicated, a person who is subject to enhanced penalties under the law. Was that objected to? No, Your Honor. And that's — you know, that it was an error, I think, is no doubt. But was it plain error? That is, did it lead to a result that is unjust, in some sense, when the court gave any number of reasons why this level of supervised release was appropriate to your client, who, though probably treated badly originally due to the requirements of the sentencing guidelines then — Yes, Your Honor. — in South Carolina, has since then done every possible thing to get himself into trouble. And that's what the court referred to. Well, there's a reasonable probability because it's an error in the court's assessment of the guidelines, in the court's assessment of who he is, calling him a career offender. Well, that's maybe just the difference between plain error and error. That is — Yes, Your Honor. — if somebody had called it to the court's attention, we would know whether it made any difference at all. But nobody did. That's correct, Your Honor. All the parties missed it. And the error seems to — the source of the error seems to be a mistake in the precedence report. In paragraph 26, it says that he is an armed career criminal within the meaning of 4B1.4, which is the guideline that goes to armed career criminal — Different from — — defendants. It goes to ACCA. But that seems to be the source of the error, and nobody picked up on it. The defense counsel didn't. The prosecutor didn't. Nobody looked at this precedence report, but apparently the court — How is this plain? I mean, I — Yes, Your Honor. To pick up on Judge Calabresi, I've also sensed that what happened here was that the word armed career criminal — Yes, Your Honor. — became the word — Yes, Your Honor. So this wasn't a slip of the tongue from the court. As the prosecutor keeps saying, there's some kind of a shorthand for — that you have, I don't know, 1619 criminal history points. It just puts you in Category 6. It's not a shorthand. This is a real error. The source of the error appears to be the mistake in the precedence report that none of the parties picked up. An argument is that there is a reasonable probability that it affected his guideline range. But when you look at what the district court said in the appendix on 141, it confirms the sentence, at least as I understand it, because of considerations of public safety, personal deterrence. Wanamaker's repeated breaches of the trust of the court, and those are factors under 3553A and 3583, not on offender status. Well, but she mentions his offender status when she's talking about his criminal history. Even the context. We have the source of the error, and the context in which the court is expressing the error indicates a reflection on — a reflection of its belief that he has some status as having been adjudicated as a career offender, a phrase that means something in every federal criminal court for the last 30, 35 years, since the 86 changes to the law. And we believe there's a reasonable probability, as the Supreme Court has said in Martina Molina's, that any time there's something affecting — this is not the calculation, but it's his status within the calculation of the guidelines. The court apparently believes he has been adjudicated a career offender under the guidelines. So even though this is a mistake in the guideline calculation, the court has made a mistake in concluding he has been adjudicated a career offender under the guidelines. And as I said, the promulgating statute, 994H, the promulgating statute for the guidelines explicitly says that career offenders are to be treated — sentenced to the maximum. And that's what Mr. Watermaker got on this violation of supervised release. He got a maximum prison sentence, even though he had already served the maximum 10-year prison sentence on the underlying felon in possession count. And we submit that there's a reasonable probability that the Court's error in its mistake in thinking that he had been adjudicated some kind of recidivist as a career offender meant that he deserved a sentence at the top of the — Even after, when the sentence of the supervised release was put in, did anybody go back to the court and say there was this error? Do you want to reconsider this sentence, which was at the bottom of the guidelines, that seemed to be appropriate? Did anybody go back to the court at all? No. At any point? No, nobody went back to the court. The parties actually thought a guideline range — agreed to a guideline range of 8 to 14 months. Yeah. The government — And then instead they got 21 to 27, and they gave 22. Yes. Yes, counsel pointed out to the court that the New York assault conviction is probably a grade B, which would have been 21 to 27. Yes. And the court gave 22. But 22 is the maximum, because he got two months, two years earlier for another violation of supervised release, which was just not following the rules of the halfway house, which is one of the violations here. One of the violations here is not following the rules of the halfway house. And the other violation is the New York assault conviction. The range was 21 to — The parties agreed to a range of 8 to 14 months. I understand that. But the range — As a grade B violation. As a grade B violation, the range is 21 to 27. I don't believe that range was actually pointed out to the court. But legally, counsel — it is 21 to 27. And counsel did point out to the court that the assault is a grade B violation. But the 22 months is the maximum sentence that the court could have imposed on him. I guess that's what I don't understand when you say that. Because the court gave him two months on a previous violation in 2015. In 2015, the court imposed two months because he hadn't followed the rules of the halfway house. And so because your maximum supervised release term is 24 months based on the grade of the underlying conviction, the maximum prison sentence the court could impose is 22 months, and that's what the court imposed. Believing — That's consistent with your argument under Section 994. Yes, Your Honor. Thank you, Your Honor. Thank you. May it please the court. My name is David Kessler. I represent the government here today, and I represented the government during most of the supervised release proceedings, including the sentencing. Let me just first very quickly make a point about the record. On page A134, that's the first page of the government's sentencing letter. In footnote 1, the government did point out to the court that the guidelines range for a B violation would have been 21 to 27 months. So that was, in fact, brought to the court's attention. I agree at some level. Yes. There was no dispute about what the ranges would have been. You're not disputing, are you, that he was not properly categorized as a career offender? I think that's right, Your Honor. I don't think anywhere in the record categorizes him as a career offender as a sort of matter of formality. And I also believe that that particular enhancement would not actually apply based on the way his crimes are categorized. They're not three crimes of violence or drug trafficking offenses. But none of that matters. The point is not that the court determined the defendant was a career offender and then applied a guidelines calculation based on that determination and then reached a sentence based on that. There's no evidence whatsoever. The evidence is that the court recognized the defendant's extensive criminal history and repeated violations of the conditions of supervised release and sentenced him based on that. Does the fact that the court described him in terms which in any number of circumstances have very, very severe consequences lead to a, you know, reasonable probability that the court in deciding the appropriate supervised release was affected by that? And that was erroneous. There's no doubt about that. So I have two answers. The first is no. On this record, there is not even a reasonable probability that the sentence would have been different given how little shrift the court paid to whatever kind of functional power that determination. In this case, we know exactly what the result's going to be. The second issue is the standard review here is not a reasonable probability. It's plain error. Plain error. Correct. And certainly there's no conceivable way in which, let's say this is an error, we reach the standard of plain error given all the other facts surrounding this sentencing. I mean, it's almost an edge hypothetical scenario in how something can maybe technically be wrong related to the guidelines and have absolutely no effect on anything related to the sentencing. So unless the court has any further questions, the government will rest on its submissions. Thank you. Well, first, Your Honor, on the third prong of plain error, reasonable probability is the standard for determining the prejudice. I cite Rosellis Morales, Supreme Court, 138th Supreme Court, 1897 and 1908. And an error that could possibly result in a higher guideline range, I mean, an error resulting in a higher guideline range, quote, usually establishes a reasonable probability that the defendant will serve a sentence that is harsher than necessary to fulfill the purposes of sentencing. And so for the third prong, yes, it is reasonable probability. It has to be a reasonable probability that the defendant's sentence was affected by the error. And so that is the standard. And the Court did categorize him as a career offender because the Court said he was adjudicated a career offender. These are not throwaway lines in Federal court. And as the Court noted, there is this error similar to what the Court said in the original pre-sentence report calling him an armed career criminal. And the government is right about this. He is not a career offender and he doesn't qualify as an armed career offender. Either of these categorizations of Mr. Wanamaker are wrong and would be wrong. But isn't this exactly the kind of situation where we have to worry about sandbagging? I don't mean that that's what happened here. But here you have somebody who sees the Court make a statement that is technically wrong. If that person thinks, it doesn't really have a big effect. If I object, the Court will correct it and then come out with a sentence. If I keep quiet, I've got a wonderful thing for appeal. And that's really where we're toughest on plain error, when somebody can kind of keep something and sandbag. Isn't that the question? I don't mean it happened here, but that's what we're going to do. I understand your question. That is always a consideration. But the record here doesn't show that. The government didn't point that out. Surely, if they had recognized the problem, they would have. They have supposedly an obligation to do justice. And if the Court is categorizing somebody as having been an adjudicated career offender, they're obligated. Had defense counsel noticed, there's no indication the defense counsel was any more on the ball than the prosecutor or any more on the ball than the Court. Everybody seems to have missed the fact that he is not a career offender. So when the Court said that, it was an error. It's really the word adjudicated. Adjudicated and a career offender. Well, she had said career offender. There's a colloquial sense of that and there's a technical sense of that. But you really focus on adjudicated and the PSR. Well, actually, Your Honor, I think there is no colloquial career offender. They call people career criminals, you know, when they're at the local bar drinking. Adjudicated career offender means something in federal court, in federal court only. I believe if I went to a bar tonight and talked about a career offender, people would scratch their head and say, oh, you mean career criminals. Judges in federal courts. I'll try not to, Your Honor. But, again, we argue that this error was plain and there's a reasonable probability it affected Mr. Warrenmaker's sentence. Thank you, Your Honor. Thank you. Thank you both for your arguments. The Court will reserve decision. Here are the next case on the case.